**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**COURTNEY ALICE SPENCER**,

      Plaintiff,

v.                                                                        Case No. 8:25-cv-2455-WFJ-NHA

**HILLSBOROUGH COUNTY**
**SCHOOL BOARD**,

      Defendant.

_____/

## <u>ORDER</u>

Before the Court is Defendant Hillsborough County School Board's (the "School Board") Motion to Dismiss. Dkt. 16. Plaintiff Courtney Alice Spencer ("Plaintiff") has responded in opposition, Dkt. 20, and the School Board has replied. Dkt. 22. After careful consideration, the Court grants the School Board's Motion to Dismiss.

## BACKGROUND

This dispute arises out of Plaintiff's employment as a physics teacher at Sumner High School in the Hillsborough County School District. *See* Dkt. 5 ¶¶ 4, 8; *id.* at 15. On April 5, 2025, Plaintiff was notified that she was "placed on administrative leave with pay . . . pending an investigation into violation of ethical conduct[.]" *Id.* at 12. A later-composed detective's report from the Hillsborough County Sheriff's Office describes Plaintiff texting "unidentified juveniles at the

school, who she had picked out as believing they also were [a]utistic after she herself was diagnosed." *Id.* at 25. It was reported that Plaintiff was identifying certain students during Autism Awareness Month and requesting that they take the "Aspie Quiz," which is an online "self-administered questionnaire to measure autistic traits in adults" provided by the website "Embrace Autism." *Id.* at 32, 33; *see* Dkt. 20 at 2 (discussing "Plaintiff's use of a published, peer-reviewed, scientifically valid questionnaire . . . for *Autism Awareness Month* shortly after Plaintiff received her official diagnosis at 34 years old").

After this was discovered, school administration reportedly informed Plaintiff that "this activity was outside the scope of her teaching duties as a physics teacher and directed her to immediately cease this behavior." Dkt. 5 at 31; *see id.* ¶ 13 ("Defendant also instructed Plaintiff to remove the scientific supplementary material from her classroom before administrative leave was invoked.").

During the pendency of this investigation, the School Board reportedly never served Plaintiff with formal charges or entered the same in her personnel file. *Id.* ¶ 7. Plaintiff claims that the School Board did not inform her that "a referral to the [Florida] Department of Education [("DOE")] had already been predetermined." *Id.* ¶ 8. On April 17, 2024, Plaintiff resigned from her position. *Id.* Plaintiff claims that she "would not have resigned . . . had she been given lawful notice of charges that were meant for the referral to the DOE." *Id.* At some point after this date, Plaintiff found new employment in education. *See id.* at 27, 28.

On August 18, 2024, an online report was made to the Hillsborough County Sheriff's Office in which the parent of one of Plaintiff's former students claims that Plaintiff was "harassing us and our extended family." *Id.* at 24. The subsequent detective's report states that Plaintiff first called the school in an attempt to reach the student but was unsuccessful, which likely prompted the Plaintiff to contact the student by texting the student's grandmother. *Id.* at 25. The parent then sought a temporary injunction against stalking in state court, detailing that Plaintiff "looked up information of relatives . . . and texted them with wild and baseless accusations. She has pursued my minor child for months. We already blocked her everywhere and made our social media private. . . . [S]he previously harassed us in April 2024[.]" *Id.* at 29.

On August 28, 2024, Final Judgment of Injunction for Protection was entered after a hearing on the matter. *Id.* at 41. Plaintiff alleges that the injunction was only obtained because the parent received Plaintiff's personal information via the School Board improperly transmitting investigatory materials to the Hillsborough County Sheriff's Office. *Id.* ¶ 10, 23. On September 10, 2025, Plaintiff sought to dissolve the final judgment, *id.* at 39–40, but this was summarily denied by the state court, as it was found that Plaintiff merely sought to "re-litigate the case." *Id.* at 41.

Plaintiff's new employer was made aware of the final judgment, and on September 18, 2024, she was required to sign a form that certified that she was to have "no direct communication with current or former students outside of the

methods outlined in the employment manual." *Id.* at 7, 27. On January 24, 2025, Plaintiff was terminated from this new employment. *Id.* at 7, 28.

At some point, this matter was referred to the DOE, and an administrative complaint was brought against Plaintiff. *See id.* at 22. As a part of this process, Plaintiff claims that the School Board transmitted "false and stigmatizing allegations to the [DOE]." *Id.* ¶ 9. Specifically, Plaintiff points to the School Board's alleged labeling of Plaintiff's use of the "Aspie Quiz" as a "personal belief" that "created a harmful condition" and "affected the health, safety, or welfare of a student," *id.* ¶¶ 9, 12, 13, instead of recognizing the questionnaire as a "clinically validated and peer-reviewed scientific resource[.]" *Id.* ¶ 12. The DOE referred the matter to the Division of Administrative Hearings ("DOAH"), but the DOE eventually voluntarily dismissed the administrative complaint on August 4, 2025. *Id.* at 22. As a result, the DOAH ordered that all hearings be canceled and that the file be closed. *Id.*

On September 12, 2025, Plaintiff filed suit against the School Board. Dkt. 1. Plaintiff's operative Amended Complaint brings two claims under 42 U.S.C. § 1983 for deprivation of liberty interest without due process (stigma-plus), concerning the DOE referral (Count I), and the stalking injunction (Count II). Dkt. 5. As a remedy, Plaintiff seeks reinstatement into her former teaching position, backpay, and that the School Board be ordered to "correct and restore Plaintiff's personnel file." *Id.* 10–11.

## LEGAL STANDARD

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal reading, however, does not exempt *pro se* plaintiffs from the pleading standards outlined in the Federal Rules of Civil Procedure or the Local Rules of the Middle District of Florida. *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005); *Caton v. Louis*, No. 2:07-CV-32-FtM-99SPC, 2007 WL 9718731, at *1 (M.D. Fla. Feb. 21, 2007). Moreover, a district court may not serve as a *pro se* plaintiff's "de facto counsel" or "rewrite an otherwise deficient pleading." *See GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citation modified) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court does not need to accept as true any bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

Additionally, "[w]hen considering a motion to dismiss, . . . the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir.1993)).

## DISCUSSION

The School Board seeks to dismiss both Counts brought against it, arguing that these claims fail because Plaintiff fails to plausibly allege municipal liability under *Monell*. Dkt. 16 at 6–9. The Court agrees.

The School Board, as a municipal entity, can only be held liable under section 1983 when a plaintiff alleges that such municipal entity had an official policy or custom that caused a violation of the plaintiff's constitutional rights. *See Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1129 (11th Cir. 2023) (citation modified); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). It must be alleged that the policy or custom of the municipality was the "moving force" behind the violation. *Monell*, 436 U.S. at 693–94.

As to the alleged constitutional deprivation, Plaintiff asserts that her Fourteenth Amendment right to due process was violated by a deprivation of liberty interest when the School Board: "made and disseminated stigmatizing accusations about Plaintiff to third parties outside the District, including the Florida [DOE], without Policy 1590-compliant notice or service[,]" Dkt. 5 ¶ 18 (Count I); and "disclosed or leaked false or substantially false, stigmatizing assertions about

6

Plaintiff without notice or service required by Policy 1590 and without lawful personnel file placement or process. [The School Board] transmitted these unserved, not filed assertions to the Hillsborough County Sheriff's Office." *id.* ¶ 23 (Count II). Stated otherwise, Plaintiff alleges that her Fourteenth Amendment right to due process was violated when the School Board improperly transmitted certain information to the DOE (Count I) and to the Hillsborough County Sheriff's Office (Count II). *See id.* ¶¶ 18, 23. For purposes of resolving this motion, the Court need not decide whether Plaintiff has plausibly alleged a constitutional violation.

To establish *Monell* liability, a plaintiff must allege a violative policy or custom in one of three ways: "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (citation omitted).

First, as to an official policy, Plaintiff points to the School Board's Policy 1590 in alleging both claims,[1] *see* Dkt. at 5 ¶¶ 17–25, which she describes as

---

[1] In her response to the School Board's motion, Plaintiff includes additional allegations about Policy 3210. *See* Dkt. 20 at 10–11. However, "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Id.* (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam)). Because Plaintiff did not make such material factual allegations as to Policy 3210 in her Amended Complaint or the attachments thereto, the Court declines to consider the allegations as to this newly raised policy. *See id.*

mandating "written notice, service on the employee, and lawful placement in the personnel file before materials concerning performance or potential discipline may be used or disseminated." *Id.* ¶ 15. Plaintiff then alleges that the School Board transmitted certain information to the DOE and to the Hillsborough County Sheriff's Office in violation of Policy 1590. *See id.* ¶¶ 9, 10, 16, 18, 20, 21, 23, 25. Yet, Plaintiff's response also includes the seemingly contradictory assertion that the School Board actually transmitted this information *as required* by Policy 1590. Dkt. 20 at 10.

However, Plaintiff includes the text of Policy 1590 as an exhibit, and the Court finds that it merely requires the School Board to maintain employee personnel files containing job-related records, prohibits the inclusion of unrelated derogatory material, and requires that employees receive copies of entries and have access to their files upon request. *See* Dkt. 5 at 35–36. There is no mention of how or when information may or may not be transmitted. *See id.* Because the exhibit controls over Plaintiff's conclusory characterization of the policy, *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."), Plaintiff thus fails to plausibly allege that an official policy could have contributed to the alleged violation of Plaintiff's Fourteenth Amendment right to due process.

Next, as to an unofficial custom, the Eleventh Circuit has held that a custom must be so "persistent and widespread" that the municipal entity had either actual or

8

constructive knowledge of it. *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1277 (11th Cir. 2000) (citation modified). "[N]ormally, random acts or isolated incidents are insufficient to establish a custom[.]" *Smothers v. Childers*, 159 F.4th 922, 931 (11th Cir. 2025) (citation modified).

Here, beyond the transmissions of information related to Plaintiff, it is not alleged in the Complaint[2] that such actions are either "persistent" or "widespread." *See Denno*, 218 F.3d at 1277. Instead, as alleged, these behaviors appear to be isolated to Plaintiff's specific circumstances. *See Smothers*, 159 F.4th at 931. Thus, Plaintiff does not sufficiently allege a violative unofficial custom.

Lastly, as to a municipal official with final policymaking authority, Plaintiff asserts that Kelly King—who served as the Executive Officer for Professional Standards for Hillsborough County School District—performed the relevant violative actions "under delegated final policymaking authority from the Superintendent[.]" Dkt. 5 ¶¶ 21, 23. However, the Eleventh Circuit has held that in Florida "[i]t is the school board—not the superintendent—that has the 'final policymaking authority' required under *Monell*." *Chabad Chayil, Inc.*, 48 F.4th at 1230–31. Because Plaintiff alleges that Kelly King acted pursuant to authority

---

[2] In her response to the School Board's motion, Plaintiff includes an additional factual allegation that "the District routinely transmits investigative materials to the [DOE] . . . using the same institutional reporting process employed here." Dkt. 20 at 10. Because Plaintiff did not make such material factual allegations in her Amended Complaint or the attachments thereto, the Court declines to consider such alleged ongoing custom. *See Wilchombe*, 555 F.3d at 959; *see also See Osan v. Verizon Fla. LLC*, 2015 WL 13749752, at *3 (M.D. Fla. Sept. 1, 2015) ("New allegations made in the response to the motion to dismiss cannot 'save' an insufficiently pleaded complaint from dismissal.").

delegated by the Superintendent, and not by the School Board itself, the allegations do not establish action by an official with final policymaking authority under *Monell*.

Accordingly, both claims thus fail to sufficiently allege municipal liability under *Monell*. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted as to Counts I and II, and the Court grants the School Board's motion.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant Hillsborough County School Board's Motion to Dismiss, Dkt. 16, is **GRANTED**. Plaintiff Courtney Alice Spencer's claims under § 1983 (Counts I and II) are **DISMISSED**.

**DONE AND ORDERED** at Tampa, Florida, on May 26, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record